```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
DIGITAL TELEMEDIA INC., d/b/a/        :
LOGICWORKS,                           :         04 Civ. 1734 (CSH)
                                      :
                    Plaintiff,        :
                                      :         MEMORANDUM OPINION
        -against-                     :              AND ORDER
                                      :
C I HOST, INC. and LOGICWORKS         :
CORPORATION,                          :
                                      :
                    Defendants.       :
--------------------------------------------------------------- x
```

HAIGHT, Senior District Judge:

This is an action brought by plaintiff Digital Telemedia, Inc., d/b/a Logicworks ("Plaintiff" or "Logicworks"), against defendants C. I. Host, Inc. ("C. I. Host") and Logicworks Corporation (collectively, "Defendants") for trademark infringement, cyberpiracy, unfair competition, and deceptive trade practices. Plaintiff has moved for partial summary judgment, seeking transfer of the domain name "www.logicworks.com" from Defendants to Plaintiff. For the following reasons, Plaintiff's motion for partial summary judgment is denied.

## BACKGROUND

### A. Plaintiff

Plaintiff Digital Telemedia is a web hosting company founded in New York City in 1993. Plaintiff's Memorandum of Law in Support of Its Motion for Partial Summary Judgment ("Plaint. Mem.") at 2. In about 2001, Plaintiff decided to rename itself, and investigated the availability of the trade name "Logicworks". *Id.* at 3. Plaintiff performed a trademark search, and determined that no entity offering similar services had previously taken the Logicworks

1

name. *Id.* at 3-4.

Plaintiff did, however, discover that the domain name "www.logicworks.com" had already been registered by a Logicworks Corporation in Bedford, Texas. *Id.* at 4. Attempts to contact the registrant of the domain name were unsuccessful.[1] *Id.* Plaintiff was able to determine that Defendant C. I. Host was located at the same address that was provided by Logicworks Corporation on the domain name registry. *Id.* at 5. Plaintiff's investigator phoned two C. I. Host employees, who had never heard of Logicworks Corporation. *Id.* A visit to the logicworks.com site showed a single page with the name "Logicworks" and a logicworks logo (two interconnecting gears). *Id.* at 4.

Based on this research, Plaintiff determined that the Logicworks name was available for its use. Because the domain name www.logicworks.com was not available (and Plaintiff was unable to find anyone with whom to discuss its possible purchase), Plaintiff registered the website www.logicworks.net as the website for its newly rebranded company. *Id.* at 5. Thereafter, Plaintiff applied for and received several trademarks for the Logicworks name (related to the offering of web hosting and related services), as well as an assumed name certificate in New York State. *Id.* at 5-6. In addition, Plaintiff's employees began using the "@logicworks.net" extension on their e-mail addresses, commencing January of 2002. *Id.* at 6.

---

[1] Plaintiff claims that the phone number listed for the domain name registrant had been assigned to a residential account, and that e-mails sent to the e-mail address provided in the registry were not acknowledged. *See* Plaint. Mem. at 4. Plaintiff apparently did not send any paper communication to the address listed for the Logicworks Corporation in the trademark search results, which was also the address of Defendant C. I. Host. *See* Defendants' Response to Plaintiff's Motion for Partial Summary Judgment and Supporting Memorandum of Law ("Def. Mem.") at 5.

Plaintiff claims to have spent significant amounts of money marketing its new name, and promoting products under that new name since its adoption. *Id.* at 6-7.

Sometime after the launch of operations under the Logicworks name, purportedly in response to customer confusion, Plaintiff approached Defendants about the possibility of acquiring the www.logicworks.com domain name. *Id.* at 11. Plaintiff's investigator e-mailed Logicworks Corporation about purchasing the domain name, but received a response that no "bid less than $100,000 cash" would be considered. *Id.* This apparently ended Plaintiff's attempts to acquire the domain name.

B.  **Defendants**

Defendant Logicworks Corporation was incorporated in California by Christopher Faulkner on August 1, 2002. *Id.* at 7. Faulkner also incorporated a Logicworks entity in Texas, but not until 2004, purportedly because another entity, Computer Associates, had been using a similar logicworks name in Texas, but abandoned the name by 2004. *See* Def. Mem. at 2. Defendant C. I. Host is another of Faulkner's companies, incorporated in Texas in 1999, which offers web hosting services. *Id.* at 7.

Logicworks Corporation was incorporated to develop and sell software packages over the Internet, using the www.logicworks.com domain name (*see id.* at 4, 8-9), which was originally registered by Faulkner in late 1999 (*id.* at 8). Logicworks Corporation apparently did some business in 2001 and 2002, selling approximately 10-20 software packages, with revenue totaling between $5,000-$10,000, before ceasing operations. *See id.* at 9; *see also* Transcript of Deposition of Christopher Faulkner ("Faulkner Tr.") at 45:1-25; 46:1-12; 82:20-25.

After Logicworks Corporation ceased to market and sell software packages, the

logicworks.com website lay dormant for some time; at some point after ceasing operations, Defendants set the logicworks.com website to "point to" the C. I. Host website. *See* Faulkner Tr. at 126-29, 148-49. Faulkner did this with many of the domain names he had registered, purportedly simply as a means to boost traffic to C. I. Host's website. *See id.* at 149-51. Apparently after this litigation was commenced, the logicworks.com website was reconfigured to point to a blank page, which is the current state.[2] *See* Plaint. Mem. at 9, 11, 25.

Additionally, Defendants claim that Faulkner was never interested in selling the www.logicworks.com domain name, and responded to Plaintiff's inquiries by quoting a $100,000 cash minimum bid in order to make Plaintiff "go away." *See* Faulkner Tr. at 212-13.

**C.    The Claims**

As mentioned above, Plaintiff claims that Defendants have committed trademark infringement, cyberpiracy, and certain related wrongs. Plaintiff appears to primarily take issue with Defendants' action of pointing the logicworks.com website to the C. I. Host website, because C. I. Host and Plaintiff offer similar web hosting services. *See* Plaint. Mem. at 2.

**DISCUSSION**

**I.    Standard of Review on Motion for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see*

---

[2] Plaintiff alleges that at some point the logicworks.com website was also pointed at a website devoted to the North Atlantic Right Whale. *See* Plaint. Mem. at 8. Defendants dispute this allegation. *See* Faulkner Tr. at 140-41.

4

*also Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

## II.     Trademark Infringement Law and Analysis

To prevail on its trademark infringement claims, Plaintiff must show that "it has a valid mark entitled to protection and that [Defendants'] use of it is likely to cause confusion." *Morningside Group, Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 137 (2d Cir. 1999) (citation omitted); 15 U.S.C. § 1114(1)(a).

Defendants do not appear to dispute that Plaintiff has valid trademarks in the name Logicworks for the offering of managed web hosting and related services. *See* Def. Mem. at 12. Defendants do, however, in effect argue that there is no real likelihood of confusion, as Plaintiff offers web hosting services, while Defendant Logicworks Corporation has only been in the

5

business of software development and sales. *See id.* In support of this position, Defendants refer to Plaintiff's own earlier filings with the U.S. Patent and Trademark Office: Plaintiff's original application for one of its trademarks was initially denied as too similar to another company's use of a logicworks mark for "computer programs for use as a computer software and database design tool." Ex. A to Def. Mem. at 1 (excerpt of portion of Plaintiff's trademark application submissions). In its request for agency reconsideration, Plaintiff argued at some length that no likelihood of confusion existed between the marks, as the services offered by the companies holding the marks would not be similar, and that, therefore, "the goods or services in question [would] not [be] related or marketed in such a way that they would be encountered by the same persons in a situation that would create the incorrect assumption that they originate from the same source . . . ." *Id.* at 1-2 (quoting Trademark Manual of Examining Procedure § 1207(a)(i) (citing *Local Trademarks, Inc. v. Handy Boys, Inc.*, 16 U.S.P.Q. 2d 1156 (T.T.A.B. 1990) (LITTLE PLUMBER for drain opener not confusingly similar to LITTLE PLUMBER and design for advertising services))). Defendants now seek to use Plaintiff's previous arguments against Plaintiff.[3]

Plaintiff's current position, however, appears to be that by pointing the logicworks.com website to the C. I. Host website, which company offers web hosting services competitive with Plaintiff Logicworks, Defendants have created a likelihood of confusion, as customers seeking Plaintiff's website by (mistakenly) going to www.logicworks.com would instead be directed to

---

[3] Plaintiff's arguments were apparently convincing, as the Patent and Trademark Office approved Plaintiff's trademark application after reconsideration.

C. I. Host's website.[4]  *See* Plaint. Mem. at 2.  According to Plaintiff, these customers or potential customers may have believed the two companies are related, and may inadvertently have purchased services from C. I. Host while believing they were doing business with Plaintiff Logicworks.

In support of this claim, Plaintiff offers declarations of several of Plaintiff's employees, who allege that they have personally encountered various instances of confusion amongst customers and potential customers.  *See id.* at 9-11.  Instances of confusion referred to include "lost" e-mail messages being sent to Plaintiff's employees at the "logicworks.com" extension instead of the "logicworks.net" extension (*see* Declaration of Kenneth Ziegler ("Ziegler Decl.") ¶¶ 3-4; Declaration of Gregg Kitaeff ("Kitaeff Decl.") ¶ 8), customers attempting to visit Plaintiff's website ending up at Defendant C. I. Host's website after entering "www.logicworks.com" instead of "www.logicworks.net" (and thereafter concluding that the companies were related or Logicworks no longer existed) (*see* Ziegler Decl. ¶¶ 5-11; Kitaeff Decl. ¶¶ 3-5), potential customers, after being redirected to C. I. Host's website, purchasing services from C. I. Host while believing they were doing business with Plaintiff (*see* Kitaeff Decl. ¶ 5), and potential employees seeking to learn more about the company visiting the www.logicworks.com website instead of the www.logicworks.net website (*see* Declaration of Ben Frank Friedman ¶ 3).

In general, however, as Defendants point out (*see* Def. Mem. at 4), it appears that any

---

[4] Plaintiff points out that, in the context of alleged infringement on the Internet, there are two types of confusion to be considered: (1) traditional confusion regarding the source of goods or services, and (2) "initial interest confusion", which refers to confusion created when "potential consumers of one website will be diverted and distracted to a competing website," *Bihari v. Gross*, 119 F. Supp. 2d 309, 319 (S.D.N.Y. 2000).  *See* Plaint. Mem. at 17-18.

existing confusion may in large part have been created by Plaintiff itself, when it chose to rebrand itself Logicworks with full knowledge of the fact that www.logicworks.com was already registered to an entity named Logicworks Corporations.  Plaintiff had to know that many customers' or potential customers' first instinct would be to use the ".com" extension instead of the ".net" extension when sending e-mail messages; confusion that resulted from "lost" e-mails never reaching Plaintiff cannot necessarily be blamed upon Defendants, who took no action to encourage those trying to e-mail Plaintiff into mistakenly using the ".com" extension.

Similarly, it is not Defendants' fault that some individuals seeking to access Plaintiff Logicworks' website might mistakenly visit Defendants' www.logicworks.com website; again, the simple existence of the www.logicworks.com website, of which Plaintiff had previous knowledge, is apparently sufficient to have caused a substantial degree of the confusion complained of.

Plaintiff's specific claim that the confusion and wrongful infringement resulted from Defendants pointing the logicworks.com website to the C. I. Host website, because both companies offer similar services, presents a more difficult question.  If, as Plaintiff alleges, Defendants did indeed seek in bad faith to profit from Plaintiff's mark by creating confusion regarding whether Defendant C. I. Host's web hosting services came from the same source or were associated with Plaintiff's business, or even by intentionally creating "initial interest confusion", then Plaintiff's infringement claim may have real merit.[5]  Defendants, however, deny

---

[5] It bears noting that the logicworks.com website no longer points to the C. I. Host website (*see* Plaint. Mem. at 9), and thus an argument could be made that there is no ongoing harm to Plaintiff, even if Defendants had acted wrongly in pointing www.logicworks.com at C. I. Host's website; Plaintiff appears to claim ongoing harm because, as the logicworks.com website now simply displays a blank page, customers or potential customers currently (mistakenly) visiting the

acting in bad faith, and posit seemingly reasonable explanations for their actions; to name two examples, Defendants assert that Faulkner pointed his non-functioning domain names to the C. I. Host website as a matter of course, and that the logicworks.com website had been actively used to sell software packages prior to Plaintiff's rebranding (and thus www.logicworks.com was not utilized only to cash in on Plaintiff's name, as Plaintiff seems to claim). These assertions, supported by deposition testimony, are indicative of issues of material fact that remain in dispute in this matter. Thus, when "resolv[ing] all ambiguities and draw[ing] all reasonable inferences against the moving party," *Matsushita Elec.*, 475 U.S. at 587, it appears to the Court that Plaintiff has not established the case against Defendants to the degree necessary to support summary judgment. Accordingly, the Court declines to award partial summary judgment to Plaintiff on the trademark infringement claim.

### III. Cybersquatting Law and Analysis

Plaintiff also claims that Defendants' actions have violated the Anti-cybersquatting Consumer Protection Act ("ACPA"). When determining whether or not that statute has been violated, the Second Circuit has utilized a three-part analysis which queries: (1) whether a mark is distinctive or famous; (2) whether a domain name is identical or confusingly similar to that mark; and (3) whether that domain name was registered, trafficked in, or used with a bad faith intent to profit from that mark. *See Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d

---

logicworks.com website may interpret the blank page as an indication that "there is something wrong with Plaintiff's website or the company, and conclude that it is not reliable enough to host their websites." *Id.* at 11-12. It is difficult for the Court to entirely credit this argument, however, since at the time Plaintiff decided to rebrand itself, Plaintiff was aware of and apparently not troubled by the fact that the logicworks.com website simply displayed a single non-functioning page with the word "logicworks" and a logo of interconnecting gears. *See id.* at 4.

489, 497-98 (2d Cir. 2000).

Even accepting Plaintiff's arguments that the first two prongs of the test are satisfied in this case (*see* Plaint. Mem. at 22), Plaintiff has not established bad faith on the part of Defendants. As discussed above, Plaintiff asserts that Defendants knowingly pointed www.logicworks.com at C. I. Host's website in order to cause confusion, usurp Plaintiff Logicwork's potential customers, and profit from Plaintiff Logicworks' name and marketing. However, it appears that Faulkner owned and (arguably) operated www.logicworks.com before Plaintiff rebranded itself as Logicworks, and Defendants' position is that Faulkner, as was his practice with other unutilized domain names that he owned, pointed the logicworks.com website to C. I. Host's website simply in order to increase traffic to the site (*see* Faulkner Tr. at 126, 148-49), without intent to create confusion or profit from Plaintiff Logicworks' name.

Therefore, it appears to the Court that there are genuine issues of material fact yet to be resolved on this point. Accordingly, partial summary judgment is not appropriate at this time.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment is denied.

Counsel for the parties are directed to confer with each other as required by Federal Rule of Civil Procedure 26(f) and submit a proposed discovery plan to the Court on or before February 28, 2006.

It is SO ORDERED.

Dated: New York, New York
February 8, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE

10